MINNESOTA-KOLL CASKET COMPANY v. JOHN BARTON PAYNE, AGT. ETC.[1]

May 26, 1922.

No. 22,776.

**Carrier — tariff rate on lumber applies to coffin stock.**

The freight rate on carload lots of redwood coffin stock, planed and cut to size and shape, shipped from Santa Clara, California, to Minneapolis, Minnesota, in October, 1919, was 90 cents per hundred under the published tariffs then in force.

[1] Reported in 188 N. W. 560.

Action in the municipal court of St. Paul to recover $173.76 overcharge on a shipment of lumber. The case was tried in the district court for Ramsey county before Olin B. Lewis, J., who made findings and ordered judgment in favor of plaintiff for $118.55. Defendant's motion to amend the findings was denied. From the judgment entered pursuant to the order for judgment, defendant appealed. Reversed.

*Briggs, Weyl & Briggs,* for appellant.

*Lyle Pettijohn,* for respondent.

TAYLOR, C.

In October, 1919, plaintiff shipped a carload of redwood lumber, planed and cut to shape and size for coffins, from Santa Clara, California, to Minneapolis, Minnesota, and paid a freight charge therefor of $446.81. Plaintiff claimed that the correct freight charge as fixed by the established tariff was only $273.05, and sued to recover the alleged overcharge of $173.76. In his answer defendant claimed that the correct freight charge for this shipment was $1,042.56, and interposed a counterclaim of $595.75 for the alleged undercharge. The trial court held that there had been an overcharge of $118.55 and gave plaintiff judgment therefor. Defendant appealed.

The primary controversy is whether this shipment was governed by the tariff provision that "coffin stock, consisting of built-up or combined wood, bent or straight, including built-up wood veneered, except built-up woods any part of which is made of black walnut, cherry, holly or foreign woods," takes lumber tariff rates; or by the tariff provision that "coffins K. D. or coffin stock wooden in the white" are fifth class. The first provision is designated in the record as "item 11" of the tariff in force, and the second provision as "item 4" of that tariff. The trial court found that 2,210 pounds of third class articles had been included in this shipment for which the rate was $2.97½ per hundred pounds, amounting to the sum of $65.75. This finding is conceded to be correct by both parties. Plaintiff contended and the court held that the remaining 45,990 pounds of the shipment, amounting to more than a minimum car-

load, came within the provision for "coffin stock, consisting of built-up or combined wood," and that the lumber tariff rate applied thereto. Defendant concedes that excepting the third class articles above mentioned the shipment consisted of "built-up or combined wood," but claims that the process of manufacturing it into coffins had proceeded far enough to bring it within the classification of "coffins K. D. or coffin stock wooden in the white." The tariff provision, which defendant cites as defining the meaning of the expression, "coffins K. D." reads:

"Where ratings are provided on articles knocked down (K. D.) it involves taking apart the article shipped in such a manner as to reduce materially the space occupied; merely separating the articles into parts without reducing the bulk will not constitute knocking down or entitle the article to K. D. rating."

Clearly this shipment did not consist of coffins knocked down as that term is used in the above provision, for the parts had never been fitted or put together and no nails, hinges, catches or other means of fastening them together had ever been provided. Defendant practically concedes this, but insists that the shipment was of "coffin stock wooden in the white," within the meaning of the tariff. The provision which he cites as defining the expression "in the white" reads:

"The classification 'in the white' applies when the process of manufacture has begun (and may include one coat of priming), but when the article has not been painted or varnished."

"Item 11" gives a commodity rate and "item 4" a class rate. The tariff provides that whenever a "commodity rate is established it removes the application of the class rate to or from the same points on that commodity," with certain exceptions not here important. We take this to mean that, if both a commodity rate and a class rate be applicable, the shipment takes the commodity rate. The commodity rate of "item 11" applies only to common domestic woods excluding so-called valuable woods and foreign woods. The class rate of "item 4" contains no such limitation. It excludes all woods, whether valuable or otherwise, in process of manufacture but not

painted beyond a priming coat nor varnished. Defendant insists that the shipment in question is within this class because the process of manufacture had been begun. But the commodity rate applies to "coffin stock, consisting of built-up or combined wood, bent or straight, including built-up wood veneered." This clearly includes wood on which the process of manufacture has been begun. In order to classify a shipment as coffin stock there must be something to distinguish it from ordinary lumber. All that distinguishes the lumber in question from ordinary lumber is the fact that it has been planed smooth and cut to size and shape for coffins, and planing it and cutting it to such size and shape is all that has been done toward manufacturing it into coffins. We think the trial court was correct in holding that "item 11" governs this shipment and that the tariff rates for lumber apply.

The lumber tariff gives a rate of 55 cents per hundred on lumber and on certain specified articles manufactured therefrom including box material, silo material, tank material and numerous other articles. This provision seems to be subject to a further provision that the "rates on commodities specified herein are specific and must not be applied to analogous articles." Coffin stock or material is not referred to in this provision, and is not within this provision unless it is covered by the term lumber. The word lumber is evidently used here in its ordinary meaning to designate what is commonly known as lumber. That it was not intended to include coffin stock is apparent from the fact that coffin stock was put in a class by itself.

The lumber tariff gives a rate of 90 cents per hundred on "lumber: built-up, combined or veneered wood, except woods of value." This is the rate which was charged and collected, and defendant insists that, if the lumber tariff rates apply, this is the rate which governs. We concur in this view, as the material included in this provision is substantially the same as the material included under the classification of coffin stock, and we have not been cited to any other tariff provision which seems to be applicable.

The trial court held that the 55-cent rate applied to all of the shipment except the third-class articles, and rendered judgment on

that basis. As the 90-cent rate should have been applied, the judgment is reversed.